**SHOOK, HARDY & BACON L.L.P.**
Matthew G. Ball (SBN 208881)
mgball@shb.com
Russell Taylor (SBN 345844)
rtaylor@shb.com
Moneer Mujaddidi (SBN 364707)
mmujaddidi@shb.com
555 Mission Street, Suite 2300
San Francisco, California 94105
Telephone: 415.544.1900
Facsimile: 415.391.0281

Attorneys for Plaintiffs
COALITION FOR HUMANE IMMIGRANT RIGHTS and LEGAL SERVICES FOR CHILDREN

**SHOOK, HARDY & BACON L.L.P.**
Steven B. Weisburd (SBN 171490)
sweisburd@shb.com
Nykeemah C. McClendon (SBN 322544)
nmcclendon@shb.com
2121 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: 424.285.8330
Facsimile: 424.204.9093

Attorneys for Plaintiffs
COALITION FOR HUMANE IMMIGRANT RIGHTS and LEGAL SERVICES FOR CHILDREN

**LAWYERS' COMMITTEE FOR CIVIL RIGHTS OF THE SAN FRANCISCO BAY AREA**
Jacob Gonzalez (SBN 368061)
jgonzalez@lccrsf.org
Jordan Wells (SBN 326491)
jwells@lccrsf.org
131 Steuart Street, Suite 400
San Francisco, CA 94105
Telephone: 415.543.9444

Attorneys for Plaintiffs
COALITION FOR HUMANE IMMIGRANT RIGHTS and LEGAL SERVICES FOR CHILDREN

**COALITION FOR HUMANE IMMIGRANT RIGHTS**
CARL BERGQUIST (*pro hac vice*)
cbergquist@chirla.org
2351 Hempstead Road
Ottawa Hills, OH 43606
Telephone: 310.279.6025
ADAM REESE (SBN 362898)
areese@chirla.org
2533 West Third Street, Suite 101
Los Angeles, CA 90057
Telephone: 213.353.1333

Attorneys for Plaintiff
COALITION FOR HUMANE IMMIGRANT RIGHTS

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

COALITION FOR HUMANE IMMIGRANT RIGHTS ("CHIRLA"), a California nonprofit organization; and LEGAL SERVICES FOR CHILDREN ("LSC"), a California nonprofit organization,

Plaintiffs,

v.

MARKWAYNE MULLIN, in his official capacity as Secretary of the U.S. Department of Homeland Security; JOSEPH B. EDLOW, in his official capacity as Director of U.S. Citizenship and Immigration Services; U.S. DEPARTMENT OF HOMELAND SECURITY; and U.S. CITIZENSHIP AND IMMIGRATION SERVICES

Defendants.

Case No. 3:26-cv-07577-JSC

**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

NOTICE OF MOTION ....1
INTRODUCTION ....2
BACKGROUND ....4
LEGAL STANDARD ....5
ARGUMENT ....6
I. LSC and CHIRLA Have Standing. ....6
A. LSC and CHIRLA Have Organizational Standing ....6
B. CHIRLA Has Associational Standing. ....8
II. The Need-Based Waiver Ban Is Contrary to Law. ....10
A. Congress Declined to Categorically Ban SIJS Fee Waivers. ....10
B. Requiring Implementation of a Fee Does Not Foreclose Waiver of that Fee. ....12
III. The Need-Based Waiver Ban Is Arbitrary and Capricious. ....13
A. DHS Mistakenly Treated the Need-Based Waiver Ban as Legally Compelled. ....13
1. DHS treated the Ban as compelled and stopped there. ....13
2. Section 1805 left DHS with a clear alternative to the Need-Based Waiver Ban. ....13
B. DHS Failed to Consider Important Aspects of the Problem. ....14
IV. The Need-Based Waiver Ban Failed to Comply with Notice-and-Comment Rulemaking. ....16
A. The Need-Based Waiver Ban Required Prior Notice and Comment. ....18
B. DHS Cannot Establish Good Cause to Bypass Prior Notice and Comment. 18
V. Plaintiffs Are Entitled to Final Relief. ....19
CONCLUSION ....20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.C.R. v. Noem*, 809 F. Supp. 3d 103 (E.D.N.Y. 2025)....2
*Ariz. All. for Retired Ams. v. Mayes*, 186 F.4th 622 (9th Cir. 2026) (en banc)....6, 8
*Ayuda, Inc. v. Att'y Gen.*, 848 F.2d 1297 (D.C. Cir. 1988)....4
*Beno v. Shalala*, 30 F.3d 1057 (9th Cir. 1994)....9
*California v. Azar*, 911 F.3d 558 (9th Cir. 2018)....4, 18, 19, 20
*C.J.L.G. v. Barr*, 923 F.3d 622 (9th Cir. 2019) (en banc)....2
*Clark v. Busey*, 959 F.2d 808 (9th Cir. 1992)....16
*Ctr. for Biological Diversity v. Haaland*, 58 F.4th 412 (9th Cir. 2023)....16
*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1 (2020)....3, 13, 18
*Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100 (2025)....7, 8
*Duncan v. Walker*, 533 U.S. 167 (2001)....10
*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006)....20
*E. Bay Sanctuary Covenant v. Trump*, No. 18-cv-06810-JST, ECF No. 226 (N.D. Cal. May 7, 2026)....6
*Encino Motorcars, LLC v. Navarro*, 579 U.S. 211 (2016)....16
*Erringer v. Thompson*, 371 F.3d 625 (9th Cir. 2004)....3, 5, 17, 18
*FCC v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009)....16
*Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367 (2024)....6, 8
*Franklin v. Massachusetts*, 505 U.S. 788 (1992)....17
*FS Credit Opportunities Corp. v. Saba Capital Master Fund, Ltd.*, 608 U.S. 608 (2026)....11
*Grand Canyon Univ. v. Cardona*, 121 F.4th 717 (9th Cir. 2024)....5, 10
*Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333 (1977)....8, 9, 10
*Immigrant Legal Res. Ctr. v. Wolf*, 491 F. Supp. 3d 520 (N.D. Cal. 2020)....14, 15, 16
*INS v. Cardoza-Fonseca*, 480 U.S. 421 (1987)....11, 12
*J.L. v. Cissna*, 341 F. Supp. 3d 1048 (N.D. Cal. 2018)....17, 20
*Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024)....5, 10
*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992)....9
*Marchese v. Shearson Hayden Stone, Inc.*, 822 F.2d 876 (9th Cir. 1987)....14
*Marx v. Gen. Revenue Corp.*, 568 U.S. 371 (2013)....10, 11
*Morton v. Mancari*, 417 U.S. 535 (1974)....14
*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983)....3, 5, 13, 14

*Nat'l TPS All. v. Noem*, 166 F.4th 739 (9th Cir. 2026) .......... 19
*Occidental Eng'g Co. v. INS*, 753 F.2d 766 (9th Cir. 1985) .......... 5
*Organized Vill. of Kake v. U.S. Dep't of Agric.*, 795 F.3d 956 (9th Cir. 2015) (en banc) .......... 16
*Paulsen v. Daniels*, 413 F.3d 999 (9th Cir. 2005) .......... 19
*Russello v. United States*, 464 U.S. 16 (1983) .......... 10, 11
*S.F. Herring Ass'n v. Dep't of the Interior*, 946 F.3d 564 (9th Cir. 2019) .......... 17
*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) .......... 7, 9
*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) .......... 9
*Tingley v. Ferguson*, 47 F.4th 1055 (9th Cir. 2022) .......... 6
*Tohono O'odham Nation v. U.S. Dep't of the Interior*, 138 F.4th 1189 (9th Cir. 2025) .......... 17
*Trump v. CASA, Inc.*, 606 U.S. 831 (2025) .......... 19
*Vasquez Perdomo v. Noem*, 148 F.4th 656 (9th Cir. 2025) (per curiam) .......... 8, 9, 10
*Vasquez Perdomo v. Noem*, No. 25-cv-05605, ECF No. 256 (C.D. Cal. Nov. 13, 2025) .......... 6

**Statutes**

5 U.S.C. § 553(b)(A) .......... 17
5 U.S.C. § 553(b)(B) .......... 17, 18
5 U.S.C. § 704 .......... 16
5 U.S.C. § 706(2)(D) .......... 17, 19
8 U.S.C. § 1101(a)(27)(J) .......... 2
8 U.S.C. § 1455(a)(1) .......... 12
8 U.S.C. § 1805 .......... passim
8 U.S.C. § 1805(a)–(b) .......... 2, 11
8 U.S.C. § 1806 .......... 11
15 U.S.C. § 80a-46(b) .......... 11
28 U.S.C. § 2201(a) .......... 19

**Rules**

Fed. R. Civ. P. 56 .......... 1
N.D. Cal. Civ. L.R. 7-2, 16-5, 56-1 .......... 1

**Regulations**

8 C.F.R. pt. 106 .......... 13
8 C.F.R. § 106.3 .......... 13
8 C.F.R. § 106.3(a)(1), (a)(3)(i)(I) .......... 12
8 C.F.R. § 106.3(a)(1)(i)–(iii) .......... 4
8 C.F.R. § 106.3(a)(1)(ii) .......... 9

8 C.F.R. § 106.3(b)(1) ........ 2, 3, 14, 16
8 C.F.R. § 204.11(b)(1) ........ 15
8 C.F.R. § 204.11(c) ........ 2
8 C.F.R. § 274a.12(c)(14) ........ 2

**Other Authorities**

Powers and Duties of Service Officers; Availability of Service Records, 51 Fed. Reg. 39,993 (Nov. 4, 1986) ........ 4

U.S. Citizenship and Immigration Services Fee Schedule and Changes to Certain Other Immigration Benefit Request Requirements, 88 Fed. Reg. 402 (proposed Jan. 4, 2023) ........ 2, 15, 16

U.S. Citizenship and Immigration Services Fee Schedule and Changes to Certain Other Immigration Benefit Request Requirements, 89 Fed. Reg. 6,194 (Jan. 31, 2024) ........ 14, 16

U.S. Citizenship & Immigr. Servs., *Form I-912, Instructions for Request for Fee Waiver* 2 (July 22, 2025) ........ 4

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD: PLEASE TAKE NOTICE that, pursuant to the Court's August 14, 2026 Order, ECF No. 19, and Civil Local Rules 7-2, 16-5, and 56-1, Plaintiffs Coalition for Humane Immigrant Rights ("CHIRLA") and Legal Services for Children ("LSC") hereby move under Federal Rule of Civil Procedure 56 for summary judgment on Counts 1 and 2 of the Complaint, challenging Defendants' categorical ban on waivers of the fee for petitions for Special Immigrant Juvenile Status ("SIJS"). Plaintiffs respectfully request oral argument on this Motion and that the Court hear the Motion on November 19, 2026, at 10:00 a.m., or at such other date and time as the Court may order, before the Honorable Jacqueline Scott Corley in Courtroom 8, 19th Floor, United States Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102.

Plaintiffs seek: (1) summary judgment on Counts 1 and 2; (2) a declaration that 8 U.S.C. § 1805 does not prohibit waivers of the SIJS petition fee (the "SIJS Fee") or displace DHS's otherwise lawful fee-waiver authority; (3) vacatur of Defendants' categorical refusal to process waivers of the SIJS petition fee, including as set out in Form I-912 ("Instructions for Request for Fee Waiver") and other guidance; and (4) permanent injunctive relief as to CHIRLA members and SIJS clients represented by Plaintiffs, requiring Defendants to adjudicate requests for waiver of the SIJS petition fee under the surviving SIJS-specific waiver authorization in the Form I-912 Instructions and applicable fee-waiver eligibility criteria. This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities; the administrative record ("AR"), ECF No. 21; the accompanying declarations submitted herewith; the pleadings and materials on file; and any argument the Court may hear.

## INTRODUCTION

Special Immigrant Juvenile Status ("SIJS") is a humanitarian protection that a bipartisan Congress created in 1990 "to provide a path to lawful permanent residency for certain at-risk children." *C.J.L.G. v. Barr*, 923 F.3d 622, 626 (9th Cir. 2019) (en banc). SIJS protects immigrant youth who have been abused, neglected, or abandoned by their parents and who, for humanitarian reasons, should not be returned to their home countries. *See* 8 U.S.C. § 1101(a)(27)(J). Before U.S. Citizenship and Immigration Services (USCIS, a component of the Department of Homeland Security (DHS)) may grant a child SIJS, a state juvenile court must independently make the required predicate findings. *See* 8 U.S.C. § 1101(a)(27)(J); 8 C.F.R. § 204.11(c). Once USCIS approves the SIJS petition, the child may obtain lawful permanent residence when a visa becomes available—a process that can take years. *See A.C.R. v. Noem*, 809 F.Supp.3d 103, 111 (E.D.N.Y. Nov. 19, 2025) (noting that USCIS admitted that SIJS petitioners "would have to wait years before a visa became available"). During that wait, USCIS may grant the child deferred action, which prevents removal, *see id.* at 4-7, and provides eligibility for work authorization, *see* 8 C.F.R. § 274a.12(c)(14).

USCIS, recognizing the general indigence of SIJS-eligible children, historically has waived applicable fees, including for adjustment of status, employment authorization, and waivers of inadmissibility. 8 C.F.R. § 106.3(b)(1); *accord* AR 133–34; U.S. Citizenship and Immigration Services Fee Schedule and Changes to Certain Other Immigration Benefit Request Requirements, 88 Fed. Reg. 402, 463 (proposed Jan. 4, 2023) (proposing expanded immigration-fee exemptions for SIJS recipients because "most SIJs have no means to pay the fees for these forms"). In 2025, H.R. 1 (the "One Big Beautiful Bill Act") created a $250 SIJS processing fee (the "SIJS Fee"). *See* codification at 8 U.S.C. § 1805(a)-(b). As Plaintiffs argue herein, however, in contrast to numerous surrounding fee-creating provisions containing express fee-waiver prohibitions, the legislation did not disturb USCIS's fee-waiver authority, including the authority to waive the SIJS Fee based on indigency. To the contrary, text, history, and purpose indicate that Congress intended to treat SIJS petitions differently.

Defendants, however, adopted and implemented a Need-Based Waiver Ban policy upon H.R. 1's enactment, unilaterally refusing to grant indigency-based waivers of the SIJS Fee. They premise this policy on their erroneous interpretation of H.R. 1. AR 311 n.17; AR 313 & n.19.

The Need-Based Waiver Ban violates the Administrative Procedure Act. First, DHS's conclusion that § 1805 prohibits waivers is contrary to law. Congress omitted any reference to fee waivers in § 1805, while in twelve other fee-creating provisions of the same omnibus bill, expressly prohibiting them. In fact, the House-passed version of what would become § 1805 contained an express fee-waiver prohibition, but the version Congress enacted removed it. Contrary to Defendants' contentions, § 1805 does not compel the Ban.

Second, the Ban is arbitrary and capricious, including because DHS failed to "appreciate the full scope of [its] discretion" to waive the SIJS Fee. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 26 (2020). USCIS already had a process for adjudicating fee-waiver requests based on an applicant's ability to pay. Applying that process to the SIJS Fee was an alternative "within the ambit of the existing [policy]" that DHS was required to consider. *Id.* at 30 (cleaned up). But DHS's mistaken belief that Congress compelled a Need-Based Waiver Ban prevented the agency from considering that option. DHS's mistaken view of its authority left it without "a satisfactory explanation," *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983), for choosing categorical denial over individualized waivers, particularly given its existing regulations exempting persons seeking or granted SIJS from fees for applications for lawful permanent residence, employment authorization, and waivers of inadmissibility, *see* 8 C.F.R. § 106.3(b)(1).

Third, DHS adopted and implemented the Ban without first providing the required notice-and-comment rulemaking. *See Erringer v. Thompson*, 371 F.3d 625, 630 (9th Cir. 2004) (explaining that rules that "create rights, impose obligations, or effect a change in existing law pursuant to authority delegated by Congress" generally require notice-and-comment rulemaking (cleaned up)). DHS established no good cause to bypass those procedures, and its April 2026 interim final rule (the "IFR"), which reaffirmed the Ban and invited public comment more than nine months after the Ban took effect, did not cure the defect. *See* AR 1, 11-12. As the Ninth

Circuit has explained, "it is antithetical to the structure and purpose of the APA for an agency to implement a rule first, and then seek comment later." *California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018) (cleaned up).

The Court should declare DHS's categorical ban on waivers of the SIJS petition fee unlawful, vacate the ban, and grant permanent injunctive relief requiring Defendants to adjudicate CHIRLA members' and Plaintiffs' SIJS clients' fee-waiver requests under USCIS's ordinary need-based standards. This relief would not waive any fee automatically; it would ensure only that USCIS considers each request based on ability to pay.

## BACKGROUND

For benefit requests that USCIS designates as eligible for a fee waiver, § 106.3 requires an applicant to demonstrate inability to pay through receipt of a means-tested benefit, household income at or below 150 percent of the Federal Poverty Guidelines, or extreme financial hardship. 8 C.F.R. § 106.3(a)(1)(i)-(iii).[1]

USCIS's *Form I-912 Instructions for Request for Fee Waiver* (the "Instructions") authorize waiver requests for any SIJS-related filings. They provide that "[i]f not otherwise fee exempt, you may apply for a fee waiver for ANY application or petition that is related to status as a . . . Special Immigrant Juveniles [sic]." U.S. Citizenship & Immigr. Servs., *Form I-912, Instructions for Request for Fee Waiver* 2 (July 22, 2025), https://www.uscis.gov/sites/default/files/document/forms/i-912instr.pdf [hereinafter *Instructions*]. The Instructions implement the Need-Based Waiver Ban by excluding fees required by H.R. 1, including the SIJS Fee, from waiver eligibility. *Id.* at 1.

On July 22, 2025, USCIS published a notice implementing the new H.R. 1 fees (the "Fee Notice") without prior notice and comment. AR 309-14. Although DHS acknowledged that § 1805 "does not include an explicit 'no fee waiver' provision," it concluded that § 1805's language imposing the SIJS Fee "is mandatory ('the Secretary of Homeland Security shall require

---

[1] The availability of immigration fee waivers goes back many decades. *See, e.g.*, Powers and Duties of Service Officers; Availability of Service Records, 51 Fed. Reg. 39,993, 39,993–94 (Nov. 4, 1986); *see also Ayuda, Inc. v. Att'y Gen.*, 848 F.2d 1297, 1299 & n.4, 1301 (D.C. Cir. 1988) (upholding immigration fees and relying in part on availability of inability-to-pay waivers).

the payment of a fee').” AR 311 n.17. The Notice designated the fee as having “No Fee Waiver Available,” stated that a waiver request “may not be submitted,” and directed USCIS to “reject or deny” filings submitted without the required fee. AR 310-11, 313-14.

More than nine months after implementing the Ban through the Fee Notice, DHS reaffirmed the Ban in the preamble to an April 29, 2026, interim final rule addressing H.R. 1's immigration-fee requirements. AR 1, 11. In promulgating the IFR, the agency bypassed prior notice and comment on the premise that H.R. 1 “requires immediate implementation” and “provides no discretion to DHS,” and separately invoked procedural-rule and good-cause exceptions. AR 2, 11-12. The IFR became effective May 29, 2026, a month before the public-comment period closed on June 29, 2026. AR 1.

## LEGAL STANDARD

In reviewing a motion for summary judgment on a claim under the Administrative Procedure Act (“APA”), “the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.” *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769 (9th Cir. 1985).

The Court applies different standards to Plaintiffs' contrary-to-law, arbitrary-and-capricious, and notice-and-comment claims. For the contrary-to-law claim, the Court independently determines the meaning of § 1805 and whether DHS construed it correctly—without deference to the agency's interpretation. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024); *Grand Canyon Univ. v. Cardona*, 121 F.4th 717, 723 (9th Cir. 2024) (“We review de novo whether the Department correctly construed” the statute). For the arbitrary-and-capricious claim, the Court instead asks whether DHS “entirely failed to consider an important aspect of the problem” or “offered an explanation for its decision that runs counter to the evidence before the agency.” *State Farm*, 463 U.S. at 43. Finally, whether DHS adopted a legislative rule requiring notice and comment is a legal question reviewed de novo. *Erringer*, 371 F.3d at 629 (“We review de novo the determination that an agency's rule is interpretive . . . .”).

## ARGUMENT

### I. LSC and CHIRLA Have Standing.

#### A. LSC and CHIRLA Have Organizational Standing

The requirement of standing is met where, as here, a plaintiff has "suffered an injury in fact, caused by the defendant's conduct, that can be redressed by a favorable result." *Tingley v. Ferguson*, 47 F.4th 1055, 1066 (9th Cir. 2022).

An organization suffers injury-in-fact when a challenged government action "directly affect[s] and interfere[s] with [its] core business activities." *Ariz. All. for Retired Ams. v. Mayes*, 186 F.4th 622, 633 (9th Cir. 2026) (en banc) (cleaned up). LSC's core business activities include providing free legal representation to children, a service it has provided in immigration matters for decades. Sakimura Decl. ¶¶ 5-8. That representation includes obtaining state-court predicate orders and preparing and filing SIJS petitions for abused, neglected, and abandoned immigrant children. *Id.* ¶¶ 8-9.

In *East Bay Sanctuary Covenant v. Trump*, on remand from the Ninth Circuit to reconsider summary judgment in light of the Supreme Court's decision in *Food & Drug Administration v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024), the court upheld organizational standing where a DHS rule presumptively barring certain noncitizens from eligibility for asylum "impede[d] Plaintiffs' attempts to secure immigration protection for their clients by making that representation more burdensome." No. 18-cv-06810x ¶ 9. In fiscal year 2024-2025 alone, CHIRLA represented several dozen SIJS-eligible youth and completed and filed approximately sixteen to twenty-one Form I-360 petitions. *Id.* ¶ 10.

In *Vasquez Perdomo v. Noem*, a court in the Central District of California upheld CHIRLA's organizational standing where government restrictions directly impaired its "ability to engage in the representation of immigrants and refugees that is at the core of [its] founding missions." No. 25-cv-05605, ECF No. 256, at 17 (C.D. Cal. Nov. 13, 2025). There, officials restricted attorneys' access to detainees and their ability "to communicate with the detainees." *Id.* at 18. Here, the Need-Based Waiver Ban likewise impaired CHIRLA's "ability to engage in the representation of immigrants"—specifically, its ability to file completed SIJS petitions for its

clients. *Id.* at 17. In one matter, two children's SIJS petitions were delayed for several months due to the children's inability to pay the filing fee, forcing CHIRLA to secure payment on their behalf or leave their completed petitions unfiled. Member AL Decl. ¶¶ 5-17. The SIJS petitions were otherwise complete and ready to submit, and the unavailability of the $500 was the only reason they were not filed sooner. *Id.* ¶¶ 6, 14-17. Indeed, more than ten current CHIRLA member-clients have at some point been unable to pay the fee, and several dozen additional prospective SIJS applicants face the same barrier. CHIRLA Decl. ¶ 13. Just as the access restrictions in *Vasquez Perdomo* prevented CHIRLA from "provid[ing] legal services to prospective and existing clients," the Ban has obstructed CHIRLA's submission of SIJS petitions it had already prepared. *Vasquez Perdomo*, ECF No. 256, at 16.

The work required to overcome that obstruction provides further evidence of its effect on CHIRLA's services. In *East Bay*, the court recognized that restrictions on clients' eligibility required the organizations to "undertake more costly and burdensome representation efforts to compensate for the harm to their core services." *East Bay*, ECF No. 226, at 9. CHIRLA likewise has had to incorporate financial screening, funding assistance, and efforts to secure filing fees into existing SIJS representations. CHIRLA Decl. ¶¶ 14-15. These demands on staff resources are "evidence of an injury," *Mayes*, slip op. at 18, whose concrete manifestation here was the months-long delay in filing completed petitions.

The injuries suffered by CHIRLA and LSC also satisfy the remaining elements of Article III standing: they are "fairly traceable to the challenged conduct of the defendant" and "likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Traceability requires "that the injury was likely caused by the defendant," and redressability requires "that the injury would likely be redressed by judicial relief." *Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100, 111 (2025) (cleaned up).

As to causation, Defendants will not accept an SIJS petition without the $250 fee and categorically refuse to accept or adjudicate a request to waive it. AR 310-11, 313-14. When an indigent client cannot pay, that policy prevents LSC and CHIRLA from completing the SIJS filing

that forms part of their legal-services work unless the fee is supplied from another source. Sakimura Decl. ¶¶ 14-18, 38; Member AL Decl. ¶¶ 6-17; Member GO Decl. ¶¶ 13-18.

As to redressability, Plaintiffs seek vacatur and an injunction requiring Defendants to adjudicate fee-waiver requests. "If a defendant's action causes an injury, enjoining the action . . . will typically redress that injury." *Hippocratic Med.*, 602 U.S. at 381. A plaintiff satisfies redressability "by showing that it is likely, although not certain, that his injury can be redressed by a favorable decision." *Mayes*, slip op. at 32 (cleaned up).

In *Vasquez Perdomo*, the court found redressability because the requested relief would likely restore "opportunities to meet with detainees to resume the Access/Detention Plaintiffs' core missions." No. 25-cv-05605, ECF No. 87, at 21 (C.D. Cal. July 11, 2025). Here, the requested relief would likely restore Plaintiffs' available resources to perform the obstructed legal service: filing qualifying clients' SIJS petitions without first securing payment from the family, organizational funds, or third parties. CHIRLA's pending representations illustrate that connection: it intends to file petitions for GO's children once qualifying predicate orders are entered, their household income satisfies USCIS's ordinary income-based waiver criterion, and CHIRLA would request waivers on their behalf if permitted. CHIRLA Decl. ¶¶ 22-24. Vacatur and injunctive relief would allow CHIRLA to complete those filings without the additional efforts now required "to compensate for the harm to [its] core services." *East Bay*, ECF No. 226, at 9; *see* CHIRLA Decl. ¶¶ 14-19, 24-26. Plaintiffs need not show that every fee-waiver request would be granted; it is enough that the requested relief would "likely redress at least some of" the impairment to their legal-services work by allowing some indigent clients to obtain waivers and proceed without the fee. *Diamond Alt. Energy*, 606 U.S. at 114.

**B. CHIRLA Has Associational Standing.**

CHIRLA also has standing to seek relief on behalf of its members. An association has standing when "its members would otherwise have standing to sue in their own right"; "the interests it seeks to protect are germane to the organization's purpose"; and "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

As to *Hunt*'s first requirement, GO's daughter, who became a formal CHIRLA member before this lawsuit was filed, Member GO Decl. ¶¶ 2-4, "would otherwise have standing to sue in [her] own right," *Hunt*, 432 U.S. at 343. Beginning with injury, the Ban threatens to prevent her from filing her SIJS petition because her family cannot afford the fee. GO cannot afford the $500 required for her children's petitions and does not know whether she can borrow it; without that money, their petitions will remain unfiled even after the predicate orders issue. Member GO Decl. ¶¶ 13-17. Although her daughter's petition is not yet file-ready, a threatened injury suffices where there is a "substantial risk" that it will occur. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (cleaned up). Here, that threat rests on "concrete plans" and a "specification of when," rather than "'some day' intentions." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992). When suit was filed, GO's daughter was already pursuing the necessary predicate order with CHIRLA's assistance. Member GO Decl. ¶¶ 5-6. By August 31, her application had been drafted, with some edits remaining, and GO expected CHIRLA to file it within approximately one month. *Id.* ¶ 7. GO intends for her daughter to file her I-360 petition as soon as she obtains the order. *Id.* ¶ 8. Thus, although the predicate order remains outstanding, her "concrete plans" to file, *Lujan*, 504 U.S. at 564, and the family's existing inability to pay support a "substantial risk" that the Ban will prevent her from filing. *Driehaus*, 573 U.S. at 158.

That injury is "fairly traceable" to Defendants' refusal to accept a petition without payment or consider a waiver request. *Spokeo*, 578 U.S. at 338; AR 310-11, 313-14. It is also "likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338. GO would request waivers and supply supporting documentation showing that her household income satisfies USCIS's ordinary income-based waiver criterion. Member GO Decl. ¶¶ 11, 14; CHIRLA Decl. ¶ 23; 8 C.F.R. § 106.3(a)(1)(ii). Although waiver approval remains discretionary, a favorable decision need only be "likely to redress" the injury, not "inevitably redress" it. *Beno v. Shalala*, 30 F.3d 1057, 1065 (9th Cir. 1994) (cleaned up).

And as to *Hunt*'s second requirement, the Ninth Circuit recognized CHIRLA's "institutional goals" of protecting "a broad range of rights" for its members. *Vasquez Perdomo v.*

*Noem*, 148 F.4th 656, 677 (9th Cir. 2025) (per curiam) (cleaned up). Protecting members' access to SIJS is plainly "germane to" those purposes. *Hunt*, 432 U.S. at 343.

And as to *Hunt*'s third requirement, the court in *Vasquez Perdomo* explained that because plaintiffs sought "only prospective injunctive relief (not damages)," "individual participation is not necessary for effective relief." 148 F.4th at 677 (cleaned up). Plaintiffs here likewise seek prospective relief and not damages. CHIRLA thus satisfies associational standing.

## II. The Need-Based Waiver Ban Is Contrary to Law.

DHS interprets § 1805's command that the Secretary "shall require the payment of a fee" as requiring the Need-Based Waiver Ban. AR 311 n.17. Courts "review de novo whether the Department correctly construed" the statute. *Grand Canyon*, 121 F.4th at 723. And courts "under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Loper Bright*, 603 U.S. at 412-13. The Court must "use every tool at [its] disposal to determine the best reading of the statute" and reach "the reading [it] would have reached" if no agency were involved. *Id.* at 400 (cleaned up).

### A. Congress Declined to Categorically Ban SIJS Fee Waivers.

It is this Court's "duty to give effect, if possible, to every clause and word of a statute." *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (cleaned up). Two related interpretive tools—the "*expressio unius*" canon and the canon against surplusage—confirm the meaning of the provision at issue here. "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (cleaned up). Courts therefore must "refrain from concluding . . . that the differing language in the two subsections has the same meaning in each," and may not "presume to ascribe this difference to a simple mistake in draftsmanship." *Id.* The canon against surplusage's force is "strongest when an interpretation would render superfluous another part of the same statutory scheme." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013).

Here, Congress acted "intentionally and purposely" in the "disparate" "exclusion" of a fee-waiver ban in § 1805. *Russello*, 464 U.S. at 23. Congress deployed similar "shall not be waived or

reduced" language across the twelve parallel immigration-fee provisions of H.R. 1 discussed above. Yet, in § 1805, Congress omitted any reference to fee waivers. One of those twelve provisions, 8 U.S.C. § 1806, imposes a "visa integrity fee" on "any alien issued a nonimmigrant visa at the time of such issuance." *Id.* § 1806(a)(1). Like the SIJS provision, it requires payment of the specified fee and sets the initial amount at the greater of $250 or an amount established by rule. But unlike § 1805, § 1806 also expressly provides that the fee "shall not be waived or reduced." *Compare* 8 U.S.C. § 1805(a)-(b), *with id.* § 1806(a)(1)-(2), (5). If the command that the Secretary "shall require the payment of a fee" alone categorically barred waivers, the additional prohibition would be "render[ed] superfluous." *Marx*, 568 U.S. at 386. The Court should thus "refrain from concluding . . . that the differing language in the two subsections has the same meaning in each" and reject DHS's reading of § 1805 as imposing the same Need-Based Waiver Ban Congress expressly included in § 1806. *Russello*, 464 U.S. at 23.

The drafting history confirms that the omission of a no-waiver clause from § 1805 was intentional and purposeful. *Russello*, 464 U.S. at 23-24. As passed by the House, § 1805 included: "(e) NO WAIVER.—A fee imposed under this section shall not be waived or reduced." H.R. 1, 119th Cong. § 70005(e) (as passed by House, May 22, 2025). The Senate amendment that ultimately became law removed the House's express no-waiver clause for that fee, while retaining express no-waiver clauses for the other twelve immigration-fee provisions. *Compare* H.R. 1 § 70005(e), *with* 8 U.S.C. § 1805.

The fact pattern in this case closely parallels that of *FS Credit Opportunities Corp. v. Saba Capital Master Fund, Ltd.*, 608 U.S. 608, 619-20 (2026). There, Congress amended § 47(b) of the Investment Company Act to delete the words "shall be void" while retaining them in the immediately preceding subsection and in a related statute. *Id.* The Court noted that "changed language typically indicates changed meaning" and treated the revision as "actually distinguish[ing]" the amended provision from the related statute. *Id.* at 620.

*INS v. Cardoza-Fonseca*, 480 U.S. 421 (1987), addresses the more specific circumstance presented here: Congress's rejection of a restriction contained in an earlier bill. There, the Court explained that "[t]he enactment of the House bill rather than the Senate bill in turn demonstrates

that Congress eventually refused to restrict eligibility for asylum only to aliens meeting the stricter standard." *Id.* at 442. The Court then held that "Congress does not intend *sub silentio* to enact statutory language that it has earlier discarded in favor of other language." *Id.* at 442-43 (cleaned up). Here, too, "Congress eventually refused" to enact a restriction appearing in an earlier version: the House version included a clause expressly prohibiting waiver of the SIJS fee, but the Senate removed that clause and Congress enacted the Senate text. *Compare* AR 1421 (House proposal providing that "[a] fee imposed under this section shall not be waived or reduced"), *with* AR 311 n.17 (DHS acknowledging that the enacted SIJS fee provision "does not include an explicit 'no fee waiver' provision"). Reading § 1805 as nevertheless prohibiting waivers would contravene the principle that "Congress does not intend *sub silentio* to enact statutory language that it has earlier discarded in favor of other language." *Cardoza-Fonseca*, 480 U.S. at 442-43 (cleaned up).

**B. Requiring Implementation of a Fee Does Not Foreclose Waiver of that Fee.**

Defendants argue that § 1805's direction that the Secretary "shall require the payment of a fee" is irreconcilable with waiver of the SIJS fee. AR 311 n.17.

But the existence of a required, generally applicable fee does not resolve whether payment of that fee may be waived. Even looking beyond the structure of H.R. 1 to previous enactments, consider the naturalization fee. Congress directed that the Attorney General "shall charge, collect, and account for fees prescribed by the Attorney General pursuant to section 9701 of title 31" for filing and adjudicating naturalization applications. 8 U.S.C. § 1455(a)(1). Despite that mandatory fee-collection language, USCIS's regulations expressly permit waiver of the naturalization application fee for applicants unable to pay. *See* 8 C.F.R. § 106.3(a)(1), (a)(3)(i)(I). And those waivers are routinely granted: DHS reported that USCIS waived 39,738 naturalization application fees in fiscal year 2021. AR 164. USCIS thus administers a statute directing that it "shall charge, collect, and account for" a fee while excusing certain applicants from paying it. A statute's mandatory collection language therefore does not, by itself, foreclose waiver.

## III. The Need-Based Waiver Ban Is Arbitrary and Capricious.

### A. DHS Mistakenly Treated the Need-Based Waiver Ban as Legally Compelled.

#### 1. DHS treated the Ban as compelled and stopped there.

In *Regents*, the Supreme Court concluded that DHS "did not appear to appreciate the full scope of [its] discretion" because it treated a legal determination that supported only "disallow[ing] benefits" relating to deferred action as also requiring it to end "forbearance" of removal, even though "removing benefits eligibility while continuing forbearance remained squarely within" its discretion. 591 U.S. at 26, 28-29. The Court held that because "reasoned analysis must consider the 'alternative[s]' that are 'within the ambit of the existing [policy],'" DHS was required to consider retaining forbearance without benefits. *Id.* at 30 (cleaned up). "That omission alone render[ed]" DHS's decision arbitrary and capricious. *Id.*

DHS made that same mistake here: it treated § 1805's requirement that the Secretary "require the payment" of an SIJS fee as also compelling the Need-Based Waiver Ban, and therefore never decided whether to exercise its discretion to make those waivers available. And a clear alternative lay within the ambit of USCIS's existing fee-waiver framework: DHS could impose the statutory fee while allowing qualifying SIJS petitioners to request waivers through the need-based process set out in 8 C.F.R. § 106.3. DHS acknowledged that "[f]ees, fee exemptions, and fee waivers in 8 CFR part 106 have not changed," but declared that "[f]ees imposed by HR-1 cannot be waived or reduced" and "must be paid" even when an applicant "is eligible and approved for" a waiver of the regulatory fee. AR 313 (cleaned up). The agency therefore did not weigh whether SIJS waivers should be available, determine which petitioners should qualify, or explain why the existing process should not apply. It stopped at its conclusion that Congress had compelled the Need-Based Waiver Ban.

#### 2. Section 1805 left DHS with a clear alternative to the Need-Based Waiver Ban.

In *State Farm*, the Supreme Court held that an agency acted arbitrarily and capriciously by rescinding a regulation without considering an alternative that the pertinent statute and regulatory backdrop clearly presented. 463 U.S. at 46-48. The regulation required new cars to have airbags or

seatbelts that fastened automatically. *Id.* at 34. The agency scrapped the requirement altogether, reasoning that drivers would simply unbuckle the automatic belts. *Id.* at 38. But that reason concerned only the belts. The agency never addressed the obvious alternative of continuing to require airbags: "[n]ot one sentence of its rulemaking statement discusses the airbags-only option." *Id.* at 48. The omission was fatal because the airbags-only option was not some new policy the agency had to invent; it was already "within the ambit of the existing Standard." *Id.* at 51.

Here, leaving intact DHS's existing authority to waive fees for indigent SIJS petitioners was "more than a policy alternative." *Id.* USCIS's need-based process existed, DHS conceded H.R. 1 left it untouched, AR 313, and the agency had long treated SIJS petitioners and recipients as specially protected for fee purposes. *See* 8 C.F.R. § 106.3(b)(1) (exempting persons seeking or granted SIJS from the fees for adjustment of status, employment authorization, and waivers of inadmissibility); U.S. Citizenship and Immigration Services Fee Schedule and Changes to Certain Other Immigration Benefit Request Requirements, 89 Fed. Reg. 6,194, 6,271 (Jan. 31, 2024) (expanding those exemptions to relieve SIJS recipients granted deferred action of the fee for employment authorization); AR 122, 311 (USCIS charging no fee to process a Form I-360 petition filed for SIJS classification). Nothing in § 1805 expressly displaced that framework, and Congress is presumed to have legislated with awareness of that regulatory backdrop. *See Marchese v. Shearson Hayden Stone, Inc.*, 822 F.2d 876, 878 (9th Cir. 1987) ("presume that Congress was aware of the existing administrative regulations and interpretations each time it reauthorized the Act"). That alternative likewise fell "within the ambit" of DHS's existing fee-waiver framework and would have given effect both to Congress's command that DHS impose a fee and to the existing SIJS fee-waiver and exemption regime. It also would have avoided treating Congress's silence as having displaced that framework by implication, a result courts do not readily infer. *See Morton v. Mancari*, 417 U.S. 535, 549 (1974) ("repeals by implication are not favored").

**B. DHS Failed to Consider Important Aspects of the Problem.**

An agency also acts arbitrarily and capriciously when it "entirely fail[s] to consider an important aspect of the problem." *State Farm*, 463 U.S. at 43. In *Immigrant Legal Resource*

*Center v. Wolf* ("*ILRC*"), 491 F. Supp. 3d 520, 540-41 (N.D. Cal. 2020), the court applied *State Farm*'s "important aspect of the problem" requirement to a DHS rule increasing immigration fees while restricting fee waivers and, in a separate rule, delaying the affected population's eligibility to work. *Id.* In finding likely success or serious questions on the merits at the preliminary-injunction stage, the court reasoned that "without being able to work, asylum applicants lack the resources to pursue their claims," *id.* at 541 (cleaned up), and concluded that, "[b]y failing to consider the combined impact of these rules," DHS either "failed to consider an important aspect of the problem and disregarded 'inconvenient facts'" or "reached a conclusion that defies common sense." *Id.* at 541 (cleaned up).

Here, DHS failed to consider how denying eligibility for need-based waivers would affect a population DHS had previously found largely unable to pay and often unable to work. *See* 88 Fed. Reg. at 463 (finding that "most SIJs have no means to pay" immigration fees and that many "are in the foster care system or full-time students or both, without an ability to work"); *see* AR 122 (expressly retaining and expanding SIJS-related fee exemptions based on that reasoning). DHS also failed to consider that inability to work may prevent the petitioner from paying the fee; nonpayment will result in rejection; and the petitioner may turn twenty-one before being able to file again—resulting in permanent loss of eligibility for SIJS and its path to deferred action from removal, work authorization, and lawful permanent residence. *See* 8 C.F.R. § 204.11(b)(1) (providing that a SIJS petitioner must be under twenty-one "at the time of filing the petition"); AR 314 (noting that a SIJS petition submitted without the required fee "will be rejected"). DHS acknowledged generally that the rule "may affect the disposable income for certain families" and that the new fees "could have a financial impact on a family," but concluded that it had "few alternatives other than this rulemaking" and was "required to collect the subject fees." AR 19.

That is the same reasoning the court in *ILRC* rejected: "[b]y failing to consider the combined impact" of the fee requirement and the simultaneous denial of waivers, DHS "disregarded 'inconvenient facts'"—here, its own previous findings that most SIJS petitioners could not pay and many could not work. 491 F. Supp. 3d at 541.

Moreover, DHS also failed to consider its own longstanding regulatory practice. An agency may change course, but it must "provide a reasoned explanation for the change" and "display awareness that it is changing position." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016) (cleaned up); *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). Where the new policy rests on findings that contradict those underlying the old one, the agency must give "a reasoned explanation . . . for disregarding facts and circumstances that underlay or were engendered by the prior policy." *Fox*, 556 U.S. at 515-16. *See also Organized Vill. of Kake v. U.S. Dep't of Agric.*, 795 F.3d 956, 969 (9th Cir. 2015) (en banc) (setting aside an agency rule because "[t]he absence of a reasoned explanation for disregarding previous factual findings violates the APA"). Simply put, an agency cannot "disregard contrary or inconvenient factual determinations that it made in the past." *Id.* at 969 (cleaned up).

Before the Ban, DHS's fee-waiver practice with respect to SIJS had run the other way. USCIS exempted persons seeking or granted SIJS from the fees for adjustment of status, employment authorization, and waivers of inadmissibility. 8 C.F.R. § 106.3(b)(1). And very recently, in 2024, it expanded those exemptions, relieving SIJS recipients granted deferred action of the fee for employment authorization. *See* 89 Fed. Reg. at 6,271; AR 122. Each step rested on the agency's finding that "most SIJs have no means to pay" immigration fees. 88 Fed. Reg. at 463. The Ban reverses that course for the single filing that opens the door to SIJS. DHS neither acknowledged the reversal nor explained it.

Because DHS "failed to consider an important aspect of the problem and disregarded 'inconvenient facts,'" *ILRC*, 491 F. Supp. 3d at 541 (cleaned up), the Need-Based Waiver Ban is arbitrary and capricious and therefore violates the APA.

**IV. The Need-Based Waiver Ban Failed to Comply with Notice-and-Comment Rulemaking.**

The relevant agency action is the July 2025 Fee Notice, which actually imposed the Ban. The April 2026 IFR's later reaffirmation of that prohibition does not displace review of the Notice

itself.[2] *See Ctr. for Biological Diversity v. Haaland*, 58 F.4th 412, 417 (9th Cir. 2023) (considering whether agency action constitutes a "definitive statement of the agency's position" or has a "direct and immediate effect on the day-to-day operations of the subject party"); *Tohono O'odham Nation v. U.S. Dep't of the Interior*, 138 F.4th 1189, 1200 (9th Cir. 2025) ("The core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties." (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992))); *S.F. Herring Ass'n v. Dep't of the Interior*, 946 F.3d 564, 579 (9th Cir. 2019) (finding finality where the agency "stat[ed] a definitive position" and then implemented it); *J.L. v. Cissna*, 341 F. Supp. 3d 1048, 1067 (N.D. Cal. 2018) (guidance constituted final agency action where the agency began concretely implementing it).

DHS adopted the Need-Based Waiver Ban "without observance of procedure required by law." 5 U.S.C. § 706(2)(D). "The APA requires agencies to advise the public through a notice in the Federal Register of the terms or substance of a proposed substantive rule, allowing the public a period to comment." *Erringer*, 371 F.3d at 629 (cleaned up). The APA provides two exceptions to prior notice-and-comment rulemaking. First, § 553(b)(A) exempts "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b)(A). Second, § 553(b)(B) excepts agency actions in which the agency "for good cause finds" that those procedures are "impracticable, unnecessary, or contrary to the public interest." *Id.* § 553(b)(B).

Neither exception applies.

---

[2] Even assuming arguendo that the April 2026 IFR superseded the July 2025 Fee Notice as the final agency action, the Notice remains reviewable as an intermediate agency action. The APA expressly makes such action "subject to review on the review of the final agency action." 5 U.S.C. § 704; *see also Clark v. Busey*, 959 F.2d 808, 811 (9th Cir. 1992) (explaining that review of final agency action encompasses intermediate and procedural actions leading to that result). Thus, review of the IFR would encompass the Notice's imposition of the Ban without notice and comment.

**A. The Need-Based Waiver Ban Required Prior Notice and Comment.**

"In general terms, interpretive rules merely explain, but do not add to, the substantive law that already exists in the form of a statute or legislative rule," whereas legislative rules "create rights, impose obligations, or effect a change in existing law pursuant to authority delegated by Congress." *Erringer*, 371 F.3d at 630 (cleaned up). Under *Erringer*, "if there is no legislative basis for enforcement action on third parties without the rule, then the rule necessarily creates new rights and imposes new obligations. This makes it legislative." *Id.* (cleaned up).

Here, § 1805 requires DHS to impose a fee but does not provide that the fee "shall not be waived or reduced." As explained above, the Ban is not supplied by § 1805. Rather, DHS's rule is what "effect[s] a change in existing law" and therefore "creates new rights and imposes new obligations" under *Erringer*. 371 F.3d at 630. The Ban is therefore legislative, not merely interpretive.

**B. DHS Cannot Establish Good Cause to Bypass Prior Notice and Comment.**

Section 553(b)(B) permits an agency to dispense with prior notice and comment only when the agency "for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued)" that those procedures are "impracticable, unnecessary, or contrary to the public interest." 5 U.S.C. § 553(b)(B). The exception is "narrowly construed and only reluctantly countenanced," and an agency must "overcome a high bar" to invoke it. *Azar*, 911 F.3d at 575 (cleaned up).

The July 2025 Fee Notice did not invoke the good-cause exception to notice-and-comment rulemaking. Instead, the Notice merely declared that "[t]he language of HR-1 prohibits fee waivers or exemptions for" the SIJS fee and that "[t]here is no separate authority permitting fee waivers for Form I-360." AR 313. Nothing in the Notice finds that prior notice and comment would be impracticable, unnecessary, or contrary to the public interest, or explains why any of those grounds applies. Because DHS made none of the findings required by § 553(b)(B), that provision did not excuse the agency's failure to provide prior notice and comment. Nor may Defendants invoke good cause for the first time in this litigation: "An agency must defend its actions based on the reasons it gave when it acted." *Regents*, 591 U.S. at 24.

Even if the April 2026 IFR—which for the first time provides a purported good-cause rationale—could constitute the final agency action appropriate for review, the Need-Based Waiver Ban would fare no better. DHS deemed notice and comment "unnecessary" because H.R. 1 supposedly left "no room for public debate over the agency's course of action," AR 11, and "impracticable and contrary to the public interest" because immediate implementation was necessary to carry out a statute that purportedly left DHS no discretion, AR 2, 11-12.

But notice and comment was not "unnecessary." As explained above, § 1805 gave DHS discretion to waive the fee, and public comments could have "persuade[d] the agency to modify" its plan to ban need-based waivers. *Azar*, 911 F.3d at 580-81 (cleaned up).

Nor was notice and comment impracticable, as DHS could "both follow section 553 and execute its statutory duties": it could collect the fee required by § 1805 while accepting waiver requests during the pendency of the rulemaking process. *Id.* at 576 (cleaned up).

And finally, notice and comment was not contrary to the public interest because DHS identified no harm that would result from temporarily accepting waiver requests, much less established that "delay would do real harm to life, property, or public safety." *Id.* (cleaned up).

DHS's assertion that immediate implementation without notice-and-comment rulemaking was necessary therefore does not satisfy the APA's "high bar" for good cause. *Id.* at 575-78. In sum, the Ban was adopted "without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

## V. Plaintiffs Are Entitled to Final Relief.

Both factors favor vacatur: DHS misinterpreted § 1805, inadequately considered the consequences for indigent children, and omitted required notice and comment. Vacating the Need-Based Waiver Ban would leave the SIJS Fee in place while removing the Instructions' prohibition on waiving H.R. 1 fees insofar as it applies to the SIJS Fee, leaving their SIJS-specific waiver authorization free to apply to that fee. *Instructions*, *supra*, at 1–2. *See Paulsen v. Daniels*, 413 F.3d 999, 1008 (9th Cir. 2005) ("The effect of invalidating an agency rule is to reinstate the rule previously in force."); *Nat'l TPS All. v. Noem*, 166 F.4th 739, 767–68 (9th Cir. 2026) (affirming nationwide vacatur under APA § 706(2) notwithstanding *Trump v. CASA, Inc.*, 606 U.S. 831

(2025), because "[i]t would be impossible to grant complete relief to the Plaintiffs short of a full set aside" of the challenged agency actions).

The Court should also declare under 28 U.S.C. § 2201(a) that § 1805 creates the SIJS Fee but neither displaces DHS's otherwise lawful fee-waiver authority nor requires the Ban.

Permanent injunctive relief is also warranted. The four requirements—irreparable injury, inadequate legal remedies, a favorable balance of hardships, and consistency with the public interest—are satisfied. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Lost SIJS eligibility constitutes irreparable injury, *J.L.*, 341 F. Supp. 3d at 1069 (identifying the injury as "the lost eligibility for SIJ status and their continued inability to obtain work authorization that follows as a result"), as does economic harm where damages are unavailable, *Azar*, 911 F.3d at 581. The balance of hardships and public interest merge when the government is a party. *Id.* Both favor relief here: an injunction would protect SIJS eligibility while requiring DHS to comply with the APA. *See id.* ("The public interest is served by compliance with the APA"). The Court should therefore require Defendants to adjudicate fee-waiver requests by CHIRLA members and SIJS clients represented by Plaintiffs under the surviving SIJS-specific waiver authorization in the Form I-912 Instructions and applicable fee-waiver eligibility criteria.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant summary judgment for Plaintiffs.

Dated: September 19, 2026

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

By: */s/ Matthew G. Ball*
Matthew G. Ball
*Attorney for Plaintiffs*
COALITION FOR HUMANE IMMIGRANT RIGHTS and LEGAL SERVICES FOR CHILDREN

LAWYERS' COMMITTEE FOR CIVIL RIGHTS OF THE SAN FRANCISCO BAY AREA

By: */s/ Jacob Gonzalez*
Jacob Gonzalez
*Attorney for Plaintiffs*

COALITION FOR HUMANE IMMIGRANT RIGHTS and LEGAL SERVICES FOR CHILDREN

COALITION FOR HUMANE IMMIGRANT RIGHTS

By: */s/ Carl Bergquist*

(*pro hac vice*)
*Attorney for Plaintiff*
COALITION FOR HUMANE IMMIGRANT RIGHTS

**ATTESTATION**

I, Jacob Gonzalez, am the ECF user whose identification and password are being used to file the foregoing document. In compliance with LR 5-1(i)(3), I hereby attest that all parties have concurred in this filing.

DATED: September 18, 2026

By: *<u>/s/ Jacob Gonzalez</u>*
Jacob Gonzalez
*Attorney for Plaintiff*